IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| RASHEDDA LENECE J., | ) |
|---|---|
| Plaintiff, | ) |
| | ) Case No. 18-CV-545-JFJ |
| v. | ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Rashedda Lenece J. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and ALJ's Decision

Plaintiff, then a 38-year-old female, protectively applied for Title II and Title XVI benefits on January 22, 2015, alleging in both applications a disability onset date of October 15, 2014. R. 20, 201-213. Plaintiff met the insured status requirements of the Act through December 31, 2017. R. 20, 22. Plaintiff listed the condition preventing her from working as congestive heart failure. R. 229, 266. Plaintiff's claims for benefits were denied initially on July 13, 2015, and on reconsideration on October 28, 2015. R. 119-127; 134-139. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on June 7, 2017. R. 42-76. The ALJ issued a decision on September 29, 2017, finding at step five that Plaintiff was not disabled because she could perform other work. R. 17-36. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2017, and that she had not engaged in substantial gainful activity since her alleged onset date. R. 22. At step two, the ALJ found that Plaintiff's "heart disease/congestive heart failure ("CHF")/cardiomyopathy (collectively, CHF)," hypertension, degenerative disc disease/ osteoarthritis of the cervical spine, obesity, depression, bipolar disorder, and anxiety were severe impairments. The ALJ found that Plaintiff's postpartum anemia, atrial septal defect, enlarged

2

thyroid, and vocal cord polyp were all non-severe, because the conditions either resolved within months, reduced in size, or were scheduled for surgical removal. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically discussed listing 4.02 (Chronic Heart Failure), 4.00H (Other Cardiovascular Impairments [hypertension]), 1.04 (degenerative disc disease/osteoarthritis), 12.04 (affective mood disorders), and listing 12.06 (anxiety-related disorders), finding that Plaintiff had mild difficulties in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself; and moderate difficulties with regard to concentrating, persisting, or maintaining pace. R. 24-27.

The ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following exceptions: the claimant can lift no more than 10 lbs. occasionally, and less than 10 lbs. frequently. Her pushing and pulling limitations are consistent with the lifting and carrying limitations. She can stand and walk up to 2 hours in an 8-hour day, and can sit for 6-8 hours in an 8-hour day for no more than an hour at a time. She should not have to leave the workplace to change positions. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She should have no more than frequent exposure to fumes, odors, dust, toxins, gases, and poor ventilation. She can perform simple and routine tasks and some complex tasks, which would allow for semi-skilled work. She can have superficial contact with supervisors, coworkers, and the public (superficial contact defined as that similar to the contact a grocery clerk might have with supervisors, coworkers, and the public).

R. 28. In support of the RFC, the ALJ discussed Plaintiff's testimony regarding her mental and physical symptoms; Plaintiff's physical and mental health treatment history; and opinion evidence from the state agency reviewers. R. 23-34.

At step four, the ALJ found Plaintiff could not perform her past relevant work. R. 34. At step five, based on the hypothetical posed to the VE and her responses, the ALJ found Plaintiff could perform the requirements of representative sedentary-exertion, unskilled occupations such

as document preparer (SVP-2), touch-up screener (SVP-2), and film touch-up inspector (SVP-2). R. 35. Plaintiff filed an appeal to the Appeals Council, and the Appeals Council denied review.

**III.     Issues and Analysis**

Plaintiff raises five allegations of error on appeal: (1) the ALJ's mental and physical RFC findings are not supported by substantial evidence; (2) the SSA and ALJ erred by failing to adequately develop the record by ordering a mental consultative examination ("CE"); (3) the ALJ's consistency findings are erroneous; (4) the ALJ failed to follow or discredit vocational expert witness testimony in favor of the Plaintiff; and (5) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision.[1]

**A.     RFC is Supported by Substantial Evidence**

**1.     Mental**

Plaintiff contends that the ALJ's assessment of both her physical and mental work-related limitations, as reflected in the RFC, are not supported by substantial evidence. Plaintiff argues that her mental RFC should have been "more severe," because Plaintiff has "been an in-patient for mental disorders on more than one occasion." ECF No. 11 at 7. Plaintiff further argues the ALJ ignored Plaintiff's problems with crying spells, excessive sleeping, her difficulty in leaving her home, and associating with other people. *Id.* at 8.

The ALJ fully considered and discussed Plaintiff's inpatient treatment during the relevant time in assessing his mental RFC, and his conclusions are supported by medical evidence. In his mental RFC analysis, the ALJ considered Plaintiff's "mental impairments and fatigue and mild

---

[1] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal. Specifically, if the case must be remanded for other reasons, a claimant should not be subject to delays caused by a likely appeal. *See infra* n.5. Because the Court finds no other grounds for reversal, the Court reaches the Appointments Clause issue in Part III.E.

4

cognitive deficiencies from medications" and found she could perform simple and routine tasks and some complex tasks, resulting in semi-skilled work. He further found her symptoms of "irritability, moodiness, and anxiety" limit her to superficial contact with the public. R. 33. In the body of his decision, the ALJ discussed Plaintiff's mental health history during the relevant time period, including a four-night stay at the Veterans' Affairs ("VA") clinic on June 2, 2016. *See* R. 27, 30. The ALJ stated that Plaintiff has not been hospitalized again; she relies on medication to address her mental impairments; she does not receive much counseling or therapy; there is no evidence that she cannot adapt to changes in her environment; she cares for her daughter and for herself with minimal assistance; and doctors have adjusted her medication to address depression, anxiety, and side effects. R. 27 (citing R. 918, 920, 925, 936). The ALJ also discussed that her mental status upon discharge from the VA hospital stay indicated improved insight and judgment and that her cognitive functioning appeared to be intact. R. 30. These conclusions are supported by the record.

The Court further finds no indication from the record that the ALJ failed to consider or properly assess the severity of Plaintiff's mental health symptoms, such as excessive crying spells. As an initial matter, Plaintiff failed to point the Court to any specific records in the argument section of her brief. Based on the records cited by Plaintiff in the fact section of her brief, Plaintiff appears to be referring to two Family and Children progress notes from 2013, wherein Plaintiff's symptoms were described as "awful" and Plaintiff reported that "all she did was cry." ECF No. 11 at 2. However, these records fall outside the relevant period and do not overwhelm the remaining evidence relied upon by the ALJ, which showed improvement in Plaintiff's mental symptoms with medication adjustments during the relevant time frame. Plaintiff also appears to rely on a visit to the VA Outpatient Clinic on January 3, 2017, wherein Plaintiff reported "crying non-stop." R. 913. This record is within the relevant time frame. However, rather than ignore the

record, the ALJ expressly considered this record and noted an adjustment to Plaintiff's medications during the visit. R. 31 (stating that doctor increased Zoloft prescription after claimant reported suicidal thoughts, depression, and lack of energy).

### 2. Physical

In assessing her physical RFC, Plaintiff argues that the ALJ failed to adequately consider "the findings of Oklahoma Heart Institute that Plaintiff's heart condition was at the New York Heart level of III-C." ECF No. 11 at 8. Plaintiff also contends that "the functional findings of her treating heart physicians should have been given great weight by the ALJ," citing to records that the ALJ allegedly ignored. *Id.* at 9.

The ALJ offered adequate explanation for both his physical RFC, and, upon review of the record, the Court finds these conclusions are supported by substantial evidence. After lengthy discussion of Plaintiff's subjective complaints and medical records, the ALJ explained his physical RFC analysis as follows:

> The claimant can lift no more than 10 lbs. occasionally, and less than 10 lbs. frequently, *due to neck pain and CHF, which could cause SOB [shortness of breath] with overexertion*. Her pushing and pulling limitations are consistent with the lifting and carrying limitations. She can stand and walk up to 2 hours in an 8-hour day, and can sit for 6-8 hours in an 8-hour day for no more than an hour at a time, *due to fatigue, SOB, and obesity*. She should not have to leave the workplace to change positions. Postural movements are limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, *because of the claimant's obesity, fatigue, and shortness of breath*. She should have no more than frequent exposure to fumes, odors, dust, toxins, gases, and poor ventilation *since those environmental irritants could aggravate the claimant's HTN and CHF, causing shortness of breath*.

R. 33 (emphasis added). Upon review of the treatment records Plaintiff complains were ignored by the ALJ in reaching this conclusion, the Court finds that the three pages, R. 393 (2/17/2015), 711 (12/13/16), and 714 (12/27/2016), are all contained within records discussed at length by the ALJ. Therefore, they were not ignored by the ALJ at all. Further, these records do not overwhelm

or contradict the other objective evidence discussed by the ALJ in assessing Plaintiff's RFC. The ALJ discussed the records from Oklahoma Heart Institute at length, and the Court finds no fault with his analysis. *See* R. 27, 29-30. Further, as discussed by the ALJ, Plaintiff's cardiac care continued well into 2017 at the VA. Records indicate that her treating physician noted significant improvement since 2014, and informed Plaintiff that it was "'very unlikely' that she had significant coronary disease." R. 25, 31-32, 1049.

> B. **SSA/ALJ Did Not Err by Failing to Order Mental CE[2]**

Plaintiff alleges that the ALJ, and SSA as a whole, erred by failing to order a CE "to determine the true level of her mental disabilities." ECF No. 11 at 5. Plaintiff contends that a mental CE was necessary, because "testing is not contained in the records from her treating medical sources"; because it would resolve conflicts and insufficiency in the record; and because Plaintiff's Veterans' Affairs ("VA") disability rating is "strong evidence of Plaintiff's actual mental RFC." *Id.* at 5-6.

"'The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "'is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.'" *Id.* (quoting *Henrie*, 13 F.3d at 361). In satisfying this duty, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of

---

[2] In the title of this argument, Plaintiff references error by the SSA and the ALJ. Therefore, although Plaintiff's opening brief focuses on the ALJ's errors, the Court has considered both whether the ALJ erred in ordering a CE based on the evidence presented to the ALJ, and whether the Appeals Council erred.

7

questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of when a CE may be ordered); 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). An ALJ has "broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has stated that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. For example, a CE "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Id.* at 1166.

The Court finds neither the ALJ or the SSA committed error by failing to develop the record by obtaining a mental CE to assess the extent of Plaintiff's limitations caused by her depression, bipolar disorder, and anxiety. First, for the reasons explained above in Part III.A.1., the mental health evidence was sufficient to allow the ALJ to determine Plaintiff's mental RFC and was not inconclusive. The ALJ cited numerous mental medical records in reaching his mental RFC determination. R. 27 (citing R. 791-794, 799-801, 911, 918, 920-925, 936), *see also* R. 30-34. These include agency psychological consultants' opinions supporting the mental RFC, which do not indicate or suggest the need for a mental CE. R. 80-82, 101-102. Further, the ALJ relied on repeated normal mental reports to treating physicians, and records showing that medication

8

adjustments after an inpatient stay for mental health problems significantly improved Plaintiff's symptoms. R. 30, 31, 33, 34. In short, the ALJ had sufficient information to determine Plaintiff's mental RFC based on treatment records, agency doctors' opinions, and other non-medical evidence. *See Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information" existed for ALJ to make disability determination). Contrary to Plaintiff's arguments, the ALJ did not need a specific RFC opinion from a CE or other medical professional to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (explaining that, while an ALJ considers medical opinions in assessing the nature and severity of a claimant's impairments, the final responsibility for determining RFC is reserved to the ALJ).

Second, the Court finds no direct conflict in the medical evidence or need for additional testing to explain a diagnosis already in the record. Plaintiff has not identified any conflicting evidence or diagnoses within the records that were presented to and discussed by the ALJ. Plaintiff relies on a letter from the VA dated October 16, 2017, which was presented to the Appeals Council. This letter states that it "is in reply to your request for a statement verifying your service-connected disabilities," and that VA "records show your service-connected disabilities are 100 percent, based on PTSD with depressive disorder, anxiety disorder, and cannabis and alcohol abuse." R. 317. This letter is not a specific medical record or diagnosis; does not indicate the date the rating was given; does not reference or include medical records; and does not overwhelm other evidence. The ALJ was aware of Plaintiff's mental conditions and treatment by the VA for such problems. Even

considering this 100% disability rating, there remained ample discretion for the Appeals Council to reject Plaintiff's appeal and deny review.[3]

C. **ALJ's Consistency Analysis Is Proper and Supported by Substantial Evidence**

Plaintiff argues that the ALJ gave no "credibility" analysis beyond "boilerplate language," and that he failed to consider the "required" factors in Social Security Ruling 96-7p. ECF No. 11 at 11. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3). Consistency findings are "peculiarly the province of the finder of fact," and courts

---

[3] In her reply brief, Plaintiff suggests for the first time that the "weight and evaluation" of the VA rating is unknown, and that Plaintiff "would not object to a remand" for the complete evaluation of the "evidence." ECF No. 14 at 2. This argument was raised in the reply brief for the first time, was not addressed by the Commissioner in the response brief, and will not be considered by the Court. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."). Plaintiff's arguments in her opening brief (which are nearly identical to those presented to the Appeals Council) relate exclusively to failure to develop the record, and not other procedural failures by the ALJ or SSA.

should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*[4]

The Court finds no error in the ALJ's consistency analysis. After the usual "boilerplate" language determining that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ went on to explain his reasoning at length:

> While the claimant states she has SOB [shortness of breath] and fatigue, numerous diagnostic tests indicate the claimant's pulmonary functioning is within normal limits (4F/64-65; 7F/8; 15F/19; 16F/2, 4). Dr. Salim noted the claimant's SOB was likely due to allergies (18F/8). Dr. Singhal stated it was "very unlikely" the claimant had significant coronary disease (18F/24). Physical examinations after complaints of SOB, chest pain, and palpitations are routinely normal (7F/3, 6; 12F/10; 18F/8, 37). The claimant's HTN is well controlled and stable with medication (6F/3; 18F/8-9). While there is clinical evidence of OA/DDD, the findings and related functional limitations are mild, especially when considering the bulk of the claimant's symptoms/limitations alleged are due to CHF and not neck pain. The claimant testified she can walk around the house without a problem. She can walk about half a block before she gets shortness of breath; she does not have any problem standing. She has been encouraged to exercise (3F/13). Physical examinations of the claimant's neck, extremities, and back are generally normal (7F/3, 6, 11; 12F/10; 18F/8, 37). She takes tramadol to control her pain (19F/3). The claimant's medication also reasonably causes her fatigue.
>
> As explained in the discussion in Section 4, since the claimant's discharge from Laureate with new medications, her depression and anxiety appear only mildly symptomatic.

---

[4] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

11

R. 32-33. The ALJ dedicated a significant portion of his opinion to explaining reasons for finding Plaintiff's subjective complaints of disabling limitations inconsistent with other evidence in the record. *Id.* All of those reasons are linked to discrepancies between Plaintiff's subjective claims and contradictory information in the objective medical records. The ALJ's statements are far more than mere "boilerplate," and the Court can discern the ALJ's reasoning, which is enough to satisfy the "substantial evidence" standard. *See Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979).

### D. ALJ Did Not Err in Analyzing VE Testimony

Plaintiff argues the ALJ erred by failing to either follow or discredit the VE's testimony in response to hypothetical questions that included limitations greater than those adopted into the RFC. In particular, the ALJ queried about a hypothetical person who would be off-task 15-20% of the work day due to "physical or psychological" impairments, and the VE responded that no competitive work would be available for such a person. R. 74-75.

Plaintiff's argument is without merit. There is no requirement that the ALJ exhaustively analyze the VE's testimony regarding limitations that the ALJ ultimately does not accept into the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1998) (ALJ is not required to discuss every piece of evidence). To the contrary, a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical question "reflect[s] with precision all of [claimant's] impairments" and limitations that are "borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, "[a]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) (citing *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990)). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the

hypothetical limitations." *Id.* If this were the case, then the ALJ would be precluded from posing more than one hypothetical. *See id.* at 931 n.2. Accordingly, the Court finds no error in the ALJ's analysis of VE testimony.

### E. Plaintiff Timely Raised the Appointments Clause Challenge[5]

For purposes of this motion, the Commissioner concedes that the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution. The Commissioner only disputes whether Plaintiff's challenge was timely.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia v. S.E.C.*, __ U.S. ___, 138 S. Ct. 2044, 2055 (2018) (internal quotations omitted). In *Lucia*, the plaintiff raised the challenge "before the [Securities and Exchange Commission], and continued pressing that claim in the Court of Appeals and this Court." *Id.* Seizing on this language, the Commissioner argues Plaintiff's challenge is not "timely," because it was not made "at any point in the administrative proceedings." ECF No. 16 at 7. However, as recently made clear by the Tenth Circuit, "underlying securities laws expressly require issue exhaustion." *Malouf v. S.E.C.*, 933 F.3d 1248, 1256 (10th Cir. 2019) (holding that Appointments Clause challenge was forfeited due to failure to comply with mandatory exhaustion requirement). In contrast, no Social Security laws or regulations require issue exhaustion. *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (explaining that, although statutes or agency regulations commonly require issue exhaustion in administrative appeals, no statute or SSA regulations do so). This has not changed in the nineteen years following *Sims*. Therefore,

---

[5] The Court has addressed this argument in prior decisions and reversed the Commissioner's decision to deny benefits based on the lack of a validly appointed ALJ. *See, e.g., Daryn Lee W. v. Saul*, No. 18-CV-401-JFJ, 2019 WL 4751551, at *8 (N.D. Okla. Sept. 30, 2019). The Commissioner has appealed these decisions to the Tenth Circuit. The analysis below is identical to the analysis in prior decisions.

13

*Lucia* does not clearly or directly answer the timeliness question in the Social Security context. *See Sims*, 530 U.S. at 109-10 (explaining that, in absence of statute or regulation, courts must carefully consider type of agency proceedings before requiring issue exhaustion).

The question presented is whether a Social Security claimant must exhaust the Appointments Clause issue before the ALJ in order to raise it on appeal to a district court.[6] No circuit court has reached this precise question. Most lower courts addressing the question have held that the Appointments Clause issue is forfeited if not raised. *See, e.g., Fortin v. Comm'r of Social Security*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) (holding that Appointments Clause challenge was forfeited because not raised before the ALJ and providing thorough explanation of both sides of issue) (string-citing twelve cases supporting majority position). A minority of courts, employing varying rationales, have held that an Appointments Clause challenge may be raised for the first time before the district court. *See, e.g., Kellett v. Berryhill*, No. CV 18-4757, 2019 WL 2339968, at *7 (E.D. Pa. June 3, 2019) (relying on *Sims*' reasoning and "futility of objecting before an ALJ who was powerless to decide a constitutional question"); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352-362 (E.D.N.C. 2019) (relying on *Sims*' reasoning; separation of powers concerns; reluctance to apply exhaustion requirements to constitutional issues; and courts being "poorly equipped" to fashion an issue-exhaustion requirement for SSA proceedings); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-26 (M.D. Pa. 2019) (limiting rationale to failure to exhaust constitutional issues and issuing alternative holding that, even if forfeited, court would exercise discretion to excuse failure to exhaust). Within the Tenth Circuit, courts are split. *Compare, e.g., Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (issue

---

[6] As explained below, Plaintiff was not required to exhaust the Appointments Clause issue before the Appeals Council in order to preserve it. *See Sims*, 530 U.S. at 112. The Commissioner's argument only succeeds, therefore, if Plaintiff was required to exhaust the issue before the ALJ.

forfeited), *with Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019) (issue not forfeited) (holding that *Sims*' reasoning logically extends to other steps in the SSA process).

The Court joins the minority position and holds that a social security claimant does not forfeit an Appointments Clause challenge by failing to exhaust the issue before the ALJ. First, this Court can discern no principled basis for distinguishing *Sims* from the instant case. In *Sims*, the Court held that that a claimant need not exhaust issues in a request for review by the Social Security Appeals Council in order to preserve issues for appeal to a district court. *Sims*, 530 U.S. at 112. Although the Court declined to reach the question of "whether a claimant must exhaust issues before the ALJ," *id.* at 107, the underlying reasoning in *Sims* applies to the entire Social Security process.

Writing for the Court, Justice Thomas first explained that the rationale for requiring issue exhaustion is "much weaker" when the "administrative proceeding is not adversarial." *Id.* at 110.[7] Writing for a plurality, he reasoned that the "differences between courts and agencies are nowhere more pronounced than in *Social Security proceedings*" and that "*Social Security proceedings* are inquisitorial rather than adversarial." *Id.* at 110-11 (emphasis added). The plurality further reasoned: "It is *the ALJ*'s duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is *similarly broad*." *Id.* at 110-11 (emphasis added). In concluding that the analogy to judicial proceedings is at is weakest in the Social Security context, the plurality explained that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.* at 112. One could easily substitute "the ALJ" for the "Council" in the preceding sentence. The plurality also explained that SSA

---

[7] *Sims* is a plurality opinion, with Parts I and II-A garnering five votes and Part I-B garnering only four.

15

regulations make "quite clear" that the entire "SSA," not merely the Appeals Council, conducts its review in a nonadversarial and informal way. *Id.* at 111. Further, like the Appeals Council forms, the ALJ-level forms also require claimants to provide only a minimal amount of information, indicating the ALJ does not depend significantly on claimants to identify issues for review. *See Bradshaw*, 372 F. Supp. 3d at 356-57 (explaining similarity of requirements in forms). The overall reasoning in *Sims* indicates that the SSA regulatory scheme cannot be parsed into adversarial and non-adversarial stages for purposes of issue exhaustion.[8] *But see Marilyn R. v. Saul*, No. 18-CV-4098, 2019 WL 4389052, at *4 (C.D. Ill. Sept. 13, 2019) (reasoning that claimants "have more responsibility for identifying the issues" at the ALJ level and that the ALJ level "is more adversarial").

Second, courts are not equipped to design a fair, well-considered issue-exhaustion requirement for Social Security proceedings. *See Bradshaw*, 372 F. Supp. 3d at 360. In this case, the Commissioner's arguments are not limited to the Appointments Clause context. *See* ECF No. 16 at 10 (arguing that courts should find forfeiture for any and all "arguments [a claimant] had not presented to the ALJ"). Yet as explained in *Bradshaw*, any judicially imposed issue-exhaustion requirement implicates several considerations: (1) the precise definition of "issue" or "argument";

---

[8] The law review article cited by the *Sims* plurality does not distinguish between the two levels of review and argues against any issue-exhaustion requirement in Social Security cases. *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1341-42 (1997) (reasoning that "issue exhaustion is doctrinally and functionally incompatible with the SSA's inquisitorial model and operating reality" and that "courts should reject the doctrine's application to SSA proceedings"). That author reasoned that "[t]he degree of agency judicialization required to justify issue exhaustion would undermine the mass justice efficiency of the SSA's inquisitorial model, place substantial strain on an already overburdened and dysfunctional adjudicative bureaucracy, and still fail to protect the judicial review rights of claimants lacking counsel in agency proceedings." *Id.*

(2) whether there should be an exception for constitutional issues;[9] (3) whether it should apply to all claimants or only those represented by counsel; and (4) whether failure to raise is an absolute bar or whether there are exceptions for newly discovered evidence. *Bradshaw*, 372 F. Supp. 3d at 360-61. Further, the exhaustion requirement requested by the Commissioner would impose an exhaustion requirement only at the ALJ level, and not at the subsequent Appeals Council level. *See Kim L.M.*, 2019 WL 3318112, at *6. It seems illogical to require exhaustion before the ALJ, but then excuse exhaustion before the final level of agency review. In short, the Court is wary of injecting an imprecise issue-exhaustion requirement into the complex and heavily regulated Social Security scheme, particularly where the Supreme Court failed to do so for the highest level of agency review.

Finally, language in Tenth Circuit law favors the minority position. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

> Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) *need not preserve issues in the proceedings before the Commissioner or her delegates. See Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The Commissioner argues this holding is limited to issues that an ALJ has "an affirmative duty to address," such as conflicts between vocational expert testimony and the Dictionary of Occupational Titles. ECF No. 16 at 13. The Court agrees that the challenged issue is

---

[9] Some courts in the minority have found the constitutional nature of the question to weigh against forfeiture, essentially because courts should be most reluctant to relinquish their ability to decide constitutional questions. *See Bradshaw*, 372 F. Supp. 3d at 362; *Bizarre*, 364 F. Supp. 3d at 424. Some courts in the majority have found this nature to weigh in favor of forfeiture, because constitutional issues are not part of the typical "inquisitorial process." *See Marilyn R.*, 2019 WL 4389052, at *5 (reasoning that ALJ has no occasion to identify an Appointments Clause issue unless identified by the claimant); *Fortin*, 372 F. Supp. 3d at 565 (reasoning that where "the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges").

17

distinguishable, and the Tenth Circuit does not appear to have meaningfully considered whether *Sims* extends to the ALJ-level of review. But there does not appear to be any other published Tenth Circuit decision limiting this language in *Hackett* or reaching a contrary result. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2018) (imposing issue-exhaustion requirement at ALJ-level when claimants are represented by counsel). Accordingly, the most relevant published decision in the Tenth Circuit counsels against a finding of forfeiture.

## IV. Conclusion

Plaintiff did not forfeit her Appointments Clause by failing to exhaust the issue before the ALJ. The Commissioner does not dispute that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. Accordingly, the ALJ's decision is **REVERSED** and the case is **REMANDED** for further proceedings before a constitutionally appointed ALJ.[10] All other issues presented on appeal are **AFFIRMED.**

**SO ORDERED** this 5th day of March, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] The proper remedy for an invalidly appointed ALJ is a new hearing before a properly appointed ALJ. *See Lucia*, 138 S. Ct. at 2055.